# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2986 | **DATE** | 9/17/2002 |
| **CASE TITLE** | | James Mertes vs. Westfield Ford | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set out in this memorandum opinion and order, Westfield's motion for summary judgment is granted in its entirety and this action is dismissed with prejudice. (27-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | SEP 1 8 2002 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | 41 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| | SN | courtroom deputy's initials | U.S. DISTRICT COURT | | |
| | | | 02 SEP 17 PM 3:26 | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES E. MERTES,                )
                               )
              Plaintiff,        )
                               )
     v.                         )     No.  00 c 2986
                               )
WESTFIELD FORD,                 )
                               )
              Defendant.        )

DOCKETED
SEP 1 8 2002

MEMORANDUM OPINION AND ORDER

James Mertes ("Mertes") has charged his former employer

Westfield Ford, Inc. ("Westfield") with (1) employment

discrimination violating the Americans with Disabilities Act

("ADA," 42 U.S.C. §§12101-12117),[1] (2) retaliatory discharge and

(3) violation of the Illinois Wage Payment and Collection Act

(820 ILCS 115/1 to 115/16).  Westfield has filed a Fed. R. Civ.

P. ("Rule") 56 motion for summary judgment, and both sides have

complied with this District Court's LR 56.1.[2]  For the reasons

---

[1]     ADA provisions will be cited "Section –," using the
Title 42 numbering rather than ADA's internal section numbers.

[2]     LR 56.1 is designed to facilitate the resolution of
Rule 56 motions by calling for evidentiary statements and
responses (in each instance with record citations), thus
highlighting the existence or nonexistence of factual disputes.
This opinion cites to Westfield's LR 56.1(a)(3) statement as "W.
St. ¶--," to Mertes' LR 56.1(b)(3)(B) statement of additional
facts as "M. Add. St. ¶--" and to Mertes' response to Westfield's
LR 56.1(a)(3) statement as "M. Resp. ¶--" (but where a W. St.
assertion is not controverted a citation to the latter ordinarily
suffices).  This opinion employs the same "W." and "M."
abbreviations in referring to the parties' exhibits ("Ex."),
memoranda ("Mem.") and reply memoranda ("R. Mem.").

set out in this memorandum opinion and order, Westfield's motion is granted in its entirety.

## Summary Judgment Standards

Familiar Rule 56 principles impose on parties moving for summary judgment the burden of establishing the lack of a genuine issue of material fact (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "consider the evidentiary record in the light most favorable to the non-moving party...and draw all reasonable inferences in his favor" (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)). And <u>Pugh v. City of Attica</u>, 259 F.3d 619, 625 (7th Cir. 2001) has echoed the teaching of <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248 (1986):

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

As with any summary judgment motion, this Court accepts nonmovant Mertes' version of any disputed facts, but only so long as it is supported by record evidence. What follows in the <u>Background</u> section is culled from the parties' submissions.

## Background

Westfield is an automobile dealership that sells and services new and used cars (W. St. ¶3). Mertes worked as a service technician for Westfield's predecessor dealership, and he was retained as a technician when Westfield purchased the

2

dealership in 1985 (id. ¶5). Because Mertes was a member of
Automobile Mechanics Union Local 701 (id. ¶51), his employment
was governed by a collective bargaining agreement between
Westfield and Local 701 that provided in pertinent part (id. ¶52;
W. Ex. C at 6):

> Voluntary resignation, discharge for cause, or absence in
> excess of six (6) months for any reason shall break the
> seniority of any employee, except where a written leave of
> absence has been granted in writing by the Employer, and
> signed off on by the Union as set forth below.
> Consideration, consistent with any law, may be given where
> such unemployment has been caused by sickness or disability.

During his employment Mertes reported to Westfield's management
some activities of other employees that he considered to be
illegal or improper, including the selling of unnecessary repair
work to consumers (W. St. ¶¶93, 99-100).

On December 30, 1998 Mertes suffered a work-related injury
to his right elbow (W. St. ¶24). Mertes sought immediate medical
treatment for the injury and filed a worker's compensation claim
in January 1999 (id. ¶¶25-26).

Although Mertes reported to work on January 4, 1999, he left
early because his injury prevented him from working (W. St. ¶29).
That same day he sought treatment from Dr. Gail Hopkins (id.
¶31). Dr. Hopkins diagnosed Mertes with an acute strain of his
right elbow, placed his right arm in a cast (id. ¶32) and ordered
him not to use his right arm or hand at all (id. ¶33).

On January 29 Dr. Hopkins removed the cast and told Mertes

3

that he would eventually be able to return to work as a mechanic (W. St. ¶34). Then on March 18 Dr. Hopkins informed Mertes that he could use his right arm to perform "light duty" work, a description that excluded any significant lifting or any repetitive motions (id. ¶36). After the lapse of another three-plus months, Dr. Hopkins gave Mertes a release-to-work note on June 30, effective no earlier than July 21 and conditioned on Mertes' showing of sufficient improvement--that note also specified that light duty meant no lifting over 10 pounds and no performance of repetitive activities (id. ¶¶43-44). Mertes provided Westfield with the note about July 1 (id. ¶45).

Those restrictions remained in place until October 4, when Dr. Hopkins gave Mertes a full release to work effective as of October 12 (W. St. ¶48). Dr. Hopkins also issued a second release to work without restriction on March 3, 2000, although the record is somewhat unclear as to how that came about (id. ¶49).

Westfield owner Salvatore Quatrochi ("Quatrochi") consulted with union representative Dennis Jawor ("Jawor") about the meaning of the earlier-quoted provision of the collective bargaining agreement and its application to Mertes (W. St. ¶56). On July 5, 1999 Quatrochi wrote Mertes that his seniority at Westfield was terminated pursuant to the collective bargaining agreement (id. ¶54; W. Ex. J). Mertes maintains that regardless

4

of the letter's use of the term "termination of seniority," his employment was itself terminated (M. Add. St. ¶¶108-09; M. Mem. 16).

On July 6 Westfield's comptroller Bonnie Kurtzman ("Kurtzman") spoke with Jawor to determine how much money Westfield owed Mertes for his unused vacation time (W. St. ¶¶4, 109). Kurtzman found the task of calculating the unused vacation time confusing, because Mertes had been owed vacation time before the accident and Kurtzman did not know whether he was also accruing vacation time during his absence from work (id. ¶112). On at least two occasions between July and August 1999, Kurtzman forwarded her calculations to Jawor, who waited several weeks before approving or correcting them (id. ¶¶113-14). During that period Kurtzman communicated with Mertes on at least one occasion to seek his assistance in determining what payments were owed to him (id. ¶117). In September 1999 Mertes accepted a check from Westfield that compensated him for the unused vacation time (id. ¶116).

On July 7, 1999 Mertes applied for employment as a technician at Fair Oaks Ford ("Fair Oaks"), which had an open position at the time (W. St. ¶62). Fair Oaks felt that Mertes' elbow problems prevented him from performing the duties of a technician and declined to hire him (id. ¶65). Then on April 7, 2000, after Dr. Hopkins had allowed Mertes to return to work

without restrictions, Mertes reapplied for the position at Fair Oaks and was hired (id. ¶67). Since then Mertes has performed the same type of work at Fair Oaks that he previously performed at Westfield and has not missed any days of work due to his injury (id. ¶68).

Meanwhile, in January 1999 Mertes had filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), asserting that Westfield had discriminated against him on the basis of his age (W. St. ¶8). EEOC issued Mertes a right-to-sue letter in June 1999, but Mertes never sued Westfield for age discrimination (id. ¶9). Instead Mertes initiated this action on May 17, 2000 (after his filing of another EEOC charge and its issuance of another right-to-sue letter), this time claiming that Westfield (1) had discriminated against him on the basis of his disability in violation of ADA, (2) had terminated him in retaliation for (a) his having filed his age-discrimination claim with EEOC, (b) his having complained of illegal or improper conduct and (c) his having filed a worker's compensation claim and (3) had violated the Illinois Act.

ADA Claim

Section 12112(a) prohibits an employer from discriminating against "a qualified individual with a disability because of the disability." In that respect Mertes seems likely to fall at the first hurdle: the need to establish a "disability" in the

6

statutory sense.  Just this last Term a unanimous Supreme Court confirmed that "[t]he impairment's impact must also be permanent or long-term" (<u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 122 S.Ct. 681, 691 (2002), citing 29 C.F.R. §§1630.2(j)(2)(ii)- (iii)).  As already stated, Mertes has been working at an identical job, performing tasks identical to his pre-injury work, since April 2000.  That scarcely appears to fit the "permanent or long-term" impairment for which ADA was designed to provide relief, thou9gh Mertes complains that he still suffers from degenerative changes in the arm that cause pain and discomfort.

But even if it were to be assumed that Mertes had been "disabled" within the meaning of ADA, his ADA claim must fail in any event because he has not met his burden of establishing[3] that he is a "qualified individual" with a disability (<u>Ross v. Ind. State Teacher's Ass'n Ins. Trust</u>, 159 F.3d 1001, 1013 (7th Cir. 1998)).  That determination must be made as of the time of the relevant employment decision (<u>id</u>.; <u>Bombard v. Fort Wayne Newspapers, Inc.</u>, 92 F.3d 560, 563 (7th Cir. 1996)).

---

[3]    In the summary judgment context, of course, Mertes' burden is only that of creating reasonable inferences, not one of proof as such (see <u>Anderson v. Baxter Healthcare Corp.</u>, 13 F.3d 1120, 1124 (7th Cir. 1994)).  But any continued repetition of that burden involves an awkward locution, an awkwardness contributed to by the fact that so much of the caselaw speaks of what an employee must "establish" or "prove" or "show."  Whenever this opinion employs such terms, it should therefore be understood as denoting Mertes' lesser burden of creating reasonable inferences, not the actual burden of persuasion.

To make the required showing Mertes must demonstrate that at the relevant time (1) he satisfied the prerequisites for the position, such as proper training, skills and experience, and (2) he was capable of performing the essential functions of the job, either with or without reasonable accommodation (Bultemeyer v. Fort Wayne Cmty. Schs., 100 F.3d 1281, 1284 (7th Cir. 1996)). It is undisputed that Mertes was qualified to work as a technician when his seniority was terminated, so the critical question is whether he could then have performed the essential functions of that job. Mertes posits that despite his physician's orders that he perform only "light duty" work, reasonable accommodations would have enabled him to perform the essential functions of a technician or of other open positions at Westfield (M. Mem. 10-12).

First, Mertes contends that he could have worked as a technician had Westfield directed his coworkers to perform all tasks on his behalf that involved lifting more than ten pounds or performing repetitive arm motions (M. Mem. 11). Westfield responds both that Mertes never requested such an arrangement and that even if he had, it would have been "so disruptive to the other technicians to require them to perform all the lifting over 10 pounds and repetitive movements of one technician that such a practice would not have been feasible and would have been unfair to all other technicians" (W. Fed. Claims Mem. 3). While Mertes

disputes Westfield's position (one that certainly appeals to common sense), he really identifies no record evidence to counter Westfield's assertion that such accommodation would have been unreasonable. And it is well established that an accommodation that imposes an "undue hardship" on an employer's business operation need not be made (Amadio v. Ford Motor Co., 238 F.3d 919, 928 (7th Cir. 2001)).

In support of his claim that such an accommodation would not be unduly burdensome, Mertes relies on his own testimony that it was "not uncommon" for the highly technical portions of certain jobs to be performed by a qualified technician if the technician assigned to the repair was not qualified to perform the technical work (M. Mem. 11-12; M. Dep. 281, 331). But splitting certain jobs between technicians with different qualifications is materially different from requiring other technicians to assist a disabled employee with just about every job. Westfield says that nearly every job for a technician requires repetitive movements and lifting over ten pounds (W. Fed. Claims R. Mem. 9), a position expressly confirmed in a recorded statement by Westfield technician Richard Kroll (W. Ex. L):

> Q:  Okay.  As far as the actual position of the--a
>     technician at this dealership, that job requires you to
>     be able to lift over ten pounds with both arms, is that
>     correct?
> A:  Yes.
> Q:  In fact, there are times when you have to lift
>     significantly over ten pounds on your own with both
>     arms?

A: Most everyday.
Q: And, your technician job also requires you to make repetitive movements with both arms everyday?
A: Yes.
Q: On virtually every job?
A: Just about.[4]

Relatedly, an employer's written job description constitutes evidence of a job's essential functions (Winfrey v. City of Chicago, 259 F.3d 610, 615 (7th Cir. 2001); DePaoli v. Abbott Labs., 140 F.3d 668, 674 (7th Cir. 1998)). Westfield's job description for the position of "lead technician" includes the physical requirement of lifting up to 70 pounds (W. Ex. D). Mertes' contention that union employees are not covered by that description because they are covered by a collective bargaining agreement and an employee manual (M. Mem. 12) is nonsensical, and the fact that Mertes could lift 70 pounds with his good arm after completing work hardening is irrelevant to what Mertes could have done at the time his seniority was terminated (Bombard, 92 F.3d at 563).

Mertes has offered nothing to evidence a factual dispute as to whether the requested accommodation was reasonable other than his own uncorroborated say-so, which is insufficient to create a material issue of fact in the face of uncontested evidence. On that score, no employer is "required to shuffle job responsibilities amongst employees to create" what amounts to a new position

---

[4]     [Footnote by this Court]   Technician Patrick Kennedy ("Kennedy") provided essentially identical testimony (W. Ex. M).

to accommodate a disabled employee (<u>Jay v. Intermet Wagner Inc.</u>, 233 F.3d 1015, 1017 (7th Cir. 2000)).

Mertes also names a variety of other tasks he says he could have performed at Westfield despite his impairment, such as taking additional training classes, performing diagnostic work, acting as shop foreman and working as a service advisor (M. Dep. 299; M. Mem. 2-3). But Mertes does not dispute that he "could not have done computer training five days a week for 8 hours a day for any length of time, and certainly not for six months" (M. Resp. ¶90). Mertes also concedes that at the time of his accident there was no shop foreman or anyone else who did only computer diagnostics (M. Resp. ¶89). Again ADA does not require an employer to "manufacture a job that will enable the disabled worker to work despite his disability" (<u>Hansen v. Henderson</u>, 233 F.3d 521, 523 (7th Cir. 2000)). Even when Mertes' testimony (which Westfield disputes) that Westfield created a position for another injured employee to drive a shuttle bus (M. Add. St. ¶41) is credited for Rule 56 purposes, Westfield was not required to do so for that employee and was likewise not required to do so for Mertes (<u>Ozlowski v. Henderson</u>, 237 F.3d 837, 841 (7th Cir. 2001)).

That leaves for consideration only the service advisor position. There is a question as to whether that position was open at the time Mertes was released to perform light-duty work

by his doctor in March 1999 (M. Dep. 207-09). For present
purposes that issue can be resolved in Mertes' favor, for
Quatrochi indicated that one of the three service advisors left
his position in February or March 1999, presumably leaving a
position open (Quatrochi Dep. 62).

But Mertes' failure to show that he was qualified for that
position torpedoes his claim in any event. To be qualified
Mertes must satisfy the legitimate prerequisites for a service
advisor position (<u>Ozlowski</u>, 237 F.3d at 840). Westfield
maintains that a service advisor, who essentially sells service
to customers, must be able to listen to and resolve customer
concerns, treat customers with respect and courtesy and work with
other employees in the service department (W. St. ¶84; W. Mem.
9). To show that he possessed the requisite skills, Mertes cites
only his own testimony that his supervisor Steven Berry ("Berry")
once told him that he would be a "terrific" service advisor (M.
Add. St. ¶43). Even if that were so (which Berry denies), Berry
was not the person responsible for hiring service advisors (M.
Dep. 208). What is instead dispositive is that Westfield service
director Richard Klaves ("Klaves"), whose responsibility it was
to determine whether a person was qualified to be a service
advisor, considered Mertes unqualified for that position (W. Ex.
K at ¶¶2-3,9). According to Klaves, the service advisor position
"involves interaction with customers and other employees on a

12

regular basis," and Klaves found Mertes to be "rude, argumentative, abrasive and very difficult to get along with" (id. at ¶¶5, 8). So Mertes has failed to demonstrate a triable issue of fact as to Westfield's explanation.

Finally, Mertes' claim that Westfield violated ADA by failing to engage him in an "interactive process" to determine an appropriate accommodation fails as well. In that respect he has not shown either that there was a vacant position for which he was qualified or that another reasonable accommodation existed (Mays v. Principi, No. 01-4227, 2002 WL 2019361, at *3 (7th Cir. Sept. 5); Winfrey, 259 F.3d at 618)).

In all, Mertes has failed to show that he was a "qualified individual" within the meaning of ADA. Westfield's motion for summary judgment on Count I must be and is granted.

Retaliation

<u>Federal Claim</u>

Mertes also charges that he was terminated in retaliation for his having filed an age discrimination claim with EEOC. Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 642-44 (7th Cir. 2002) has recently "create[d] a new rule for the adjudication of retaliation cases" (id. at 644), spelling out when summary judgment for either side is or is not appropriate in both ADA and Title VI cases. It teaches in part that a plaintiff may rely on direct evidence, without resort to inferences from

13

circumstantial evidence, to show that he suffered an adverse employment action because he filed a discrimination charge (<u>id</u>. at 644). If that evidence is contradicted, the case must be tried unless defendant presents unrebutted evidence that it would have taken the employment action even if it had no retaliatory motive (<u>id</u>.). Alternatively a plaintiff may also rely on an adaptation of the familiar <u>McDonnell Douglas</u> formulation that (<u>id</u>.):

> requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial.

Because Mertes' reliance on assertedly suspicious timing arguably invokes the first formulation (<u>Gorence v. Eagle Food Ctrs., Inc.</u>, 242 F.3d 759, 762 (7th Cir. 2001)), that method will be addressed first. In that respect Mertes argues only (1) that Berry angrily called him an obscene name for filing the EEOC charge (M. St. ¶97) and (2) that the temporal proximity between EEOC's decision to terminate his claim and the ensuing termination of his seniority creates a triable issue as to retaliatory motive (M. Mem. 13-14).

Those arguments fail (or fall) on their face. First, Mertes has admitted that Berry was in no way involved in the decision to

terminate his seniority (M. Resp. ¶61). Second, Mertes fails to

explain his odd notion that the time period to be considered

should be just one month (the interval between EEOC's <u>termination</u>

of his claim and Westfield's termination of his seniority) rather

than the logically relevant period of nearly six months (measured

from the date when Mertes <u>filed</u> his claim with EEOC). In that

respect <u>Filipovic v. K&R Express Sys., Inc.</u>, 176 F.3d 390, 399

(7th Cir. 1999) has held even a four-month interval between those

events of filing and termination was a "substantial time lapse"

that was "counter-evidence of any causal connection." And even

were that not enough, "speculation based on suspicious timing

alone does not support a reasonable inference of retaliation"

(<u>Oest v. Ill. Dep't of Corr.</u>, 240 F.3d 605, 616 (7th Cir. 2001);

accord, <u>Stone</u>, 281 F.3d at 644)("mere temporal proximity between

the filing of the charge of discrimination and the action claimed

to have been taken in retaliation for that filing will rarely be

sufficient in and of itself to create a triable issue").

Moreover, Westfield has presented unrebutted evidence that

it would have terminated Mertes' seniority even if it had no

retaliatory motive. Westfield says that it did so in accordance

with the terms of the collective bargaining agreement and that it

declined to make an exception for Mertes on the basis of his

impairment because Westfield was concerned about the precedent

such an exception might set in the workplace (Quatrochi Dep. 72-

73). Mertes has failed to discredit that explanation as a pretext by showing either (1) that Westfield was more likely motivated by discrimination than by its stated reason or (2) that Westfield's proffered reason is unworthy of credence (McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 372 (7th Cir. 1992)). Because Mertes has thus failed to present evidence creating a reasonable inference of retaliation for filing an EEOC claim, summary judgment in favor of Westfield is also granted on Count II.

## State Claims

Nothing daunted, Mertes further urges that his termination was in retaliation for his having reported to Westfield's management the illegal or improper conduct of his coworkers in violation of Illinois law. To establish such a claim a plaintiff must show (1) that he or she has been discharged, (2) that the discharge was in retaliation for his or her activities and (3) that the discharge violates a clear mandate of public policy (Hartlein v. Ill. Power Co., 151 Ill.2d 142, 160, 601 N.E.2d 720, 728 (1992)). As for the causation element, the ultimate issue is the employer's motive: If the employer has a valid nonpretextual basis for discharging the employee, the employee loses (id.).

This opinion has already held that Westfield has provided a legitimate nondiscriminatory reason for terminating Mertes' seniority. Even Mertes concedes that the contested action was

within Westfield's rights under the collective bargaining agreement (M. Mem. 15-16), and his additional evidence as to his whistle-blowing activities does not assist him in creating an inference of retaliation. In that respect he cites assertedly threatening comments made by Berry and Klaves (M. Add. St. ¶¶82-83), but he has admitted that Berry was not involved in the decision to terminate his seniority and he has offered no evidence of Klaves' involvement (M. Resp. ¶61). Mertes also repeatedly asserts that Quatrochi threatened to fire any technicians who believed Westfield's people were thieves and that Quatrochi called him a "crybaby" when he complained (M. Mem. 17; M. Add. St. ¶¶90-91, 101). Even if Quatrochi had made that threat (a contention that Westfield vigorously denies), Mertes asserts that it was triggered by the complaint of technician Kennedy (M. Dep. 144-46). But Kennedy was not fired (W. Ex. M). Furthermore, such purported name-calling by Quatrochi does not create a genuine factual issue as to the truthfulness of Westfield's stated reason for terminating Mertes' seniority based on the collective bargaining agreement.

Finally, Mertes' claims that he was retaliated against because he received less profitable jobs and unwarranted discipline are not independently actionable under Illinois tort law (<u>Graham v. Commonwealth Edison Co.</u>, 318 Ill. App.3d 736, 743-44, 742 N.E.2d 858, 865 (1st Dist. 2000)). While evidence of

such actions might perhaps bear on Westfield's intent, Mertes has provided only speculation supported by nothing other than his own self-serving testimony that disciplinary action was not warranted (M. Resp. ¶¶22-23). Meanwhile Westfield has provided Mertes' timecards showing his tardiness and absenteeism (W. Ex. H, I). As for any purported increase in unprofitable assignments after he made complaints, Mertes again cites to nothing more than his own deposition testimony for support (M. Add. St. ¶84). In any event, two other Westfield technicians testified that all technicians sometimes complain about receiving less profitable work (W. Exs. L and M). Any arguable cloud that Mertes' assertion might be thought of as casting on Westfield's motive is not enough to create a genuine issue of fact.

Mertes next contends that he was fired in retaliation for filing a worker's compensation claim. Just as with his other retaliation claims, Mertes has failed to create any reasonable doubt as to Westfield's stated reason for terminating his seniority. He adverts to a claimed general hostility towards worker's compensation claims and cites an alleged statement by Kurtzman that tied participation in Westfield's 401(k) plan to refraining from filing worker's compensation claims (another statement that Westfield denies) (M. Add. St. ¶¶67-69). It is hard to see how such a statement could create an issue of fact as to Westfield's motive. Even if Mertes' claim did indeed

foreclose his participation in Westfield's 401(k) plan, that does nothing to show that Mertes was <u>fired</u> because he filed the claim.

In short, Mertes has utterly failed to establish the element of causation as required to make out any claim of retaliatory discharge under Illinois law. Westfield's motion for summary judgment on Counts III and IV is granted as well.[5]

Wage Payment Claim

Mertes has presented no evidence or argument in support of his Illinois Wage Payment Act claim in opposition to Westfield's Rule 56 motion. Because Mertes has the burden of proof on that claim, his failure to argue it is fatal, for "[i]f the non-moving party bears the burden of proof on an issue,...that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact" (<u>Larimer v. Dayton Hudson Corp.</u>, 137 F.3d 497, 500 (7th Cir. 1998), quoting <u>Sample v. Aldi Inc.</u>, 61 F.3d 544, 547 (7th Cir. 1995)). Mertes' effectively abandoned Illinois statutory claim is therefore dismissed with prejudice.

---

[5]    While earlier Seventh Circuit cases (<u>Bourbon v. Kmart Corp.</u>, 223 F.3d 469, 473 (7th Cir. 2000) and <u>Borcky v. Maytag Corp.</u>, 248 F.3d 691, 696 n.5 (7th Cir. 2001)) have suggested that the familiar <u>McDonnell Douglas</u> burden-shifting approach might perhaps apply to state retaliation cases litigated in the federal courts, our Court of Appeals has not addressed the standard for state retaliation cases since <u>Stone</u>, 281 F.3d at 642-44 cast new light on federal retaliation doctrine. Because Mertes' failure to create a triable issue on Westfield's motive yields the same result under either Illinois tort law or the <u>Stone</u> approach, this Court also finds it unnecessary to choose between state and federal constructs.

19

## Conclusion

Mertes has failed to provide any facts from which a reasonable inference of either discrimination or retaliation may fairly be drawn. In Rule 56 terms, Mertes has not shown a genuine issue of material (that is, outcome-determinative) fact, and Westfield is entitled to a judgment as a matter of law. Its summary judgment motion is granted in its entirety, and this action is dismissed with prejudice.

Milton I. Shadur
Senior United States District Judge

Date: September 17, 2002